**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------X

NATANIEL SCICLUNA and MARCELA SCICLUNA,

Plaintiffs,

-against-

SIERRA REAL ESTATE LLC; LEE & ASSOCIATES NYC
LLC; ARTHUR WEYHE & GERTRUDE DENNIS; LEX
ASSOCIATES, LLC; SAMURO PARTNERSHIP, LP; CARO
PARTNERSHIP, LP; OLD 46 LESSEE LLC;  NEW 46
LESSEE LLC; 780 LEX PARTNERSHIP, LP; JAMES
WACHT; and JEFF RINKOV *individually*,

Defendants.

------------------------------------------X

**COMPLAINT**

Case No.: _____

PLAINTIFFS DEMAND
A TRIAL BY JURY

Plaintiffs, Nataniel and Marcela Scicluna, by their attorney, The Rose Law Group, PLLC, upon information and belief, complain as follows:

<u>**NATURE OF THE CASE**</u>

1. Plaintiffs complain pursuant to the <u>Fair Labor Standards Act</u>, 29 U.S.C. §201 *et seq.* ("FLSA") and the <u>New York State Labor Law, Articles 6 & 19</u> ("NYLL") for failure to pay the minimum wage and an overtime premium for hours Plaintiff was required to report to work, ready to perform work and actually perform work duties. Plaintiff seeks to recover unpaid back wages, the overtime premium, spread of hours pay, and an additional amount as liquidated damages, reasonable attorneys' fees and costs.

2. Plaintiffs also complain under the NYLL for retaliation as Plaintiffs were terminated for complaints protected under the NYLL §§ 215 & 740.

3. Plaintiffs also complain pursuant to the NYLL that Defendant failed to provide proper Wage Statements, Wage Notices, and failed to pay Plaintiffs on a weekly basis as provided for under the NYLL. As a result, Plaintiff seeks to obtain statutory damages, liquidated damages, reasonable attorneys' fees, and costs.

## JURISDICTION AND VENUE

4.  Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction over the claims of Plaintiff brought under common and New York law pursuant to 28 U.S.C. § 1367.

5.  Venue is proper in this district based upon Defendant doing business within the City of New York and existing within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

6.  That at all times relevant hereto, Plaintiff Nataniel Scicluna ("Scicluna") is a resident of the State of New York and Manhattan County and worked at the "Building" located at 141 E 61st Apt.5A, New York, NY 10065 along with every other building described herein.

7.  That at all times relevant hereto, Plaintiff Marcela Scicluna ("Marcela") is a resident of the State of New York and Manhattan County and worked at the "Building" located at 141 E 61st Apt.5A, New York, NY 10065 and performed duties related to other buildings as described herein.

8.  That at all times relevant hereto, Defendant Sierra Real Estate LLC ("Sierra") was and is a Domestic Limited Liability Company duly authorized and existing by virtue of the laws of the State of New York.

9.  That at all times relevant hereto, Defendant Sierra does business in the State of New York.

10.  That at all times relevant hereto, Defendant Sierra's principle place of business is 845 3rd Avenue, 4th Floor, New York, NY 10022 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

11.  That at all times relevant hereto, Defendant Lee & Associates NYC LLC ("Lee") was and is a Domestic Limited Liability Company duly authorized and existing by virtue of the laws of the State of New York.

12. That at all times relevant hereto, Defendant Lee does business in the State of New York.

13. That at all times relevant hereto, Defendant Lee's principle place of business is 845 3rd Avenue, 4th Floor, New York, NY 10022 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

14. That at all times relevant hereto, Defendant Arthur Weyhe & Gertrude Dennis ("Dennis") was the operator of a building duly authorized and existing by virtue of the laws of the State of New York.

15. That at all times relevant hereto, Defendant Dennis does business in the State of New York.

16. That at all times relevant hereto, Defendant Dennis's principle place of business is 600 Madison Avenue, 3rd Floor, New York, New York 10022 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

17. That at all times relevant hereto, Defendant Lex Associates, LLC ("Lex") was and is a Domestic Limited Liability Company duly authorized and existing by virtue of the laws of the State of New York.

18. That at all times relevant hereto, Defendant Lex does business in the State of New York.

19. That at all times relevant hereto, Defendant Lex's principle place of business is 286 Northern Blvd, Great Neck, New York 11021 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

20. That at all times relevant hereto, Defendant Samuro Partnership, LP ("Samuro") was and is a Domestic Limited Partnership duly authorized and existing by virtue of the laws of the State of New York.

21. That at all times relevant hereto, Defendant Samuro does business in the State of New York.

22. That at all times relevant hereto, Defendant Samuro's principle place of business is 138 East 61st Street, New York, New York 10021 and they manage and/or own the Building and

employed Plaintiffs along with the other Defendants.

23.     That at all times relevant hereto, Defendant Caro Partnership, LP ("Caro") was and is a Domestic Limited Partnership duly authorized and existing by virtue of the laws of the State of New York.

24.     That at all times relevant hereto, Defendant Caro does business in the State of New York.

25.     That at all times relevant hereto, Defendant Caro's principle place of business is 138 East 61st Street, New York, New York 10021 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

26.     That at all times relevant hereto, Defendant Old 46 Lessee LLC and Defendant New 46 Lessee LLC ("46") were and are Domestic Limited Liability Companies duly authorized and existing by virtue of the laws of the State of New York.

27.     That at all times relevant hereto, Defendant 46 does business in the State of New York.

28.     That at all times relevant hereto, Defendant 46's principle place of business is 12 East 46th Street, New York, New York 10017 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

29.     That at all times relevant hereto, Defendant 780 Lex Partnership, LP ("780 Lex") was and is a Domestic Limited Partnership duly authorized and existing by virtue of the laws of the State of New York.

30.     That at all times relevant hereto, Defendant 780 Lex does business in the State of New York.

31.     That at all times relevant hereto, Defendant 780 Lex's principle place of business is 138 East 61st Street, New York, New York 10021 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

32.     Defendant James Wacht ("Wacht"), upon information and belief, is the President of

Defendant Sierra and employer of Plaintiffs.

33.  Defendant Jeff Rinkov ("Rinkov"), upon information and belief, is the CEO of Defendant Lee.

34.  Herein, all Defendants are referred to together as "Defendants."

35.  Plaintiffs were at all relevant times employed by Defendants which were operated as a joint employer and/or single enterprise.

## MATERIAL FACTS

36.  Plaintiff Nataniel Scicluna and Plaintiff Marcela Scicluna are married.

37.  Plaintiff Scicluna was hired by Defendants in or around August of 2012 to work for Defendant Sierra.

38.  As part of this employment they would assist as superintendants at the 141 East 61st Street building where they lived.

39.  Plaintiff Scicluna lived in the building with his wife (Plaintiff Marcela) and their child.

40.  The property where they live has sixteen (16) units, both residential and commercial.

41.  Plaintiffs were at various times responsible for the following building addresses (both commercial and residential):

- 141 E 61st; included sixteen (16) apartments
- 136 E 61st; included commercial laundry facility
- 780 Lexington Avenue; included a commercial facility
- 138 E 61st; included bathrooms, an office, and six (6) apartments
- 223 E 58th  street; included sixteen (16) apartments and one (1) commercial room
- 204-6 E 58th street; included two (2) commercial rooms and two (2) apartments that were used for sublet housing.
- 794 Lexington Avenue; included two (2) commercial rooms and three (3) apartments
- 127 E 60th street; included two (2) commercial rooms and four (4) apartments
- 126 E 57th street; included two (2) commercial rooms and six (6) apartments
- 45 W 55th street; included twelve (12) apartments and three (3) commercial rooms
- 648 Broadway; including approximately seventy (70) offices
- 127 East 57th Street

42.     Plaintiff Scicluna was hired initially to work servicing all of the units in the property.

43.     Defendants almost immediately asked Plaintiff Marcela to also work for Defendants, without a contract or compensation, to supplement the work performed by Plaintiff Scicluna.

44.     Plaintiff Scicluna's job duties include:

    a.    Direct the porter's day to day duties;
    b.    Clean common areas in the building;
    c.    Maintenance for whole building;
    d.    Door repair and adjustment;
    e.    Change all locks;
    f.    Fasten locks and doorknobs;
    g.    Adjust doorknobs as needed;
    h.    Repair hinges on doors;
    i.    Lubricate locks and latches;
    j.    Window guard installation;
    k.    Clean apartments after tenants vacate premises;
    l.    Remove all garbage and furniture when tenants vacate premises;
    m.    Repair drywall and plaster;
    n.    Install shower curtain rods;
    o.    Remove old and install radiator valves;
    p.    Bleed radiator valves as needed;
    q.    Repair damage from other work performed by other contractors;
    r.    Install and repair smoke and carbon monoxide detectors;
    s.    Install and repair light fixtures;
    t.    Unclog any drains including tub, sink and toilet;
    u.    Unclog waste lines as needed;
    v.    Shut off valves to prevent damage as needed;
    w.    Repair and replace lights and light fixtures in all common areas;
    x.    Clear and maintain garbage shoot;
    y.    Maintain all doors in common areas on daily basis;
    z.    Maintain and repair access to roof;
    aa.   Maintain elevator doors;
    bb.   Maintain boiler room free of garbage;
    cc.   Maintain boiler as per boiler code;
    dd.   Lubricate motor and pumps;
    ee.   Remove snow during winter and maintain street area and garden area;
    ff.   Remove all garbage from construction;
    gg.   Deliver all rent bills after picking up from Defendants' office;
    hh.   Get leases signed and take to Defendants' office;
    ii.   Maintain extra keys for all apartments and all locks;
    jj.   Salt sidewalks and icy areas;
    kk.   Assist and coordinate work performed by outside contractors;

|      |                                                                                      |
|------|--------------------------------------------------------------------------------------|
| ll.  | Purchase all necessary material for repairs;                                          |
| mm.  | Report all building issues, equipment problems, and accidents to management office;   |
| nn.  | Report tenant complaints to management office;                                        |
| oo.  | Report necessary work to be done by outside mechanics;                                |
| pp.  | Supervise moving in/out of tenants;                                                   |
| qq.  | Maintain building roof;                                                               |
| rr.  | Check and clear roof drains;                                                          |
| ss.  | Maintain alleyways free of garbage;                                                   |
| tt.  | Clean street in front of building on daily basis;                                     |
| uu.  | Clean tree crates in front of building;                                               |
| vv.  | Deal with all HPD building violations;                                                |
| ww.  | Repair mailboxes;                                                                     |
| xx.  | Provide tenants with mailbox keys; and,                                               |
| yy.  | Remove/replace mailbox locks.                                                         |

45. Plaintiff Scicluna's hours were extreme, requiring him to work in excess of sixty (60) hours.

46. These hours were always flexible, ranging from 8 am until 3 am. Plaintiff Scicluna is expected to be on call twenty four (24) hours a day.

47. He was regularly told that he had to be available at all hours. Some weeks he worked significantly more than sixty (60) in order to comply with Defendants' demands.

48. Plaintiff Scicluna was expected to respond to any issues that arose and any tenant requests with no regard for holidays, sick days, family emergencies etc.

49. Defendants implemented a call center where tenants reported to the call center for requests and then the call center would contact Plaintiff Scicluna and/or Plaintiff Marcela. This feature took a toll on the Plaintiffs because it did not allow them to leave the buildings and increased their work load significantly.

50. On a regular basis, Plaintiffs would receive approximately three (3) calls per building per day. Averaging around an additional six (6) hours of work per day, on top of regular day to day duties.

51. Despite the heavy amount of work, Plaintiff Scicluna was not paid any overtime premium for the hours worked in excess of forty (40) hours each week.

52.     Defendants claimed that the apartment given to the Plaintiffs was worth around $1,500 per month. The apartment they were subjected to live in was on the 5th floor of one of the commercial buildings (141 E 61st). However, the apartment was an outdated one bedroom apartment, it contained: broken cabinets, outdated appliances, cracks in the walls and floors, etc.

53.     Defendants did not provide an appropriate notice of wage deduction for the apartment and are not entitled to an offset from the minimum wage.

54.     Plaintiffs were paid far less than the minimum wage required to be paid under the FLSA and NYLL for much of the work that was to be done.

55.     Plaintiff Marcela for some time was not paid anything for her work but was expected to be on call 24/7 and demanded to perform work for Defendants.

56.     In or around 2013, Defendants began paying Plaintiff Marcela by splitting Plaintiff Scicluna's paycheck and she was paid approximately $750.00 each month regardless of the number of hours worked.

57.     Her regular job duties included:

        a.  Communicate with Defendants on behalf of Plaintiff Scicluna;
        b.  Field phone calls and assignments for Plaintiff Scicluna;
        c.  Provide information to Defendants about the status of various projects and the building;
        d.  Clean bathrooms, kitchens and other areas after construction is complete prior to new tenants moving in;
        e.  Show open apartments and attempt to rent them on behalf of Defendants;
        f.  Communicate on behalf of potential tenants to Defendants and vice versa;
        g.  Get applications for units filled out by potential tenants;
        h.  Direct the porter's day to day duties;
        i.  Clean common areas in the building;
        j.  Maintenance for whole building;
        k.  Door repair and adjustment;
        l.  Fasten locks and doorknobs;
        m.  Adjust doorknobs as needed;
        n.  Lubricate locks and latches;

o.  Clean apartments after tenants vacate premises;
p.  Remove all garbage and furniture when tenants vacate premises;
q.  Repair drywall and plaster;
r.  Install shower curtain rods;
s.  Remove old and install radiator valves;
t.  Bleed radiator valves as needed;
u.  Repair damage from other work performed by other contractors;
v.  Install and repair smoke and carbon monoxide detectors;
w.  Install and repair light fixtures;
x.  Unclog any drains including tub, sink and toilet;
y.  Unclog waste lines as needed;
z.  Shut off valves to prevent damage as needed;
aa.  Repair and replace lights and light fixtures in all common areas;
bb.  Clear and maintain garbage shoot;
cc.  Maintain all doors in common areas on daily basis;
dd.  Maintain and repair access to roof;
ee.  Maintain elevator doors;
ff.  Maintain boiler room free of garbage;
gg.  Remove snow during winter and maintain street area and garden area;
hh.  Remove all garbage from construction;
ii.  Deliver all rent bills after picking up from Defendants' office;
jj.  Get leases signed and take to Defendants' office;
kk.  Maintain extra keys for all apartments and all locks;
ll.  Salt sidewalks and icy areas;
mm.  Assist and coordinate work performed by outside contractors;
nn.  Purchase all necessary material for repairs;
oo.  Report all building issues, equipment problems, and accidents to management office;
pp.  Report tenant complaints to management office;
qq.  Report necessary work to be done by outside mechanics;
rr.  Supervise moving in/out of tenants;
ss.  Maintain building roof;
tt.  Check and clear roof drains;
uu.  Clean street in front of building on daily basis;
vv.  Clean tree crates in front of building;
ww.  Provide tenants with mailbox keys; and,
xx.  Remove/replace mailbox locks.

58.  Defendants would frequently call Plaintiff Marcela, requiring that she answer to any requests her husband was not available to do.

59.  On a regular basis, Plaintiff Marcela worked approximately thirty (30) to forty (40) hour weeks. However, Plaintiff Marcela was required to be on call 24/7 to respond to Defendants' demands.

9

60.   In or around 2016, Plaintiff Scicluna was hired Defendant Lee & Associates Lee to 12 East 46th Street as Superintendent and Fire Safety Director. Defendant Lee pays Plaintiff Scicluna to work forty (40) hours each week in that location and compensates him $30.00 per hour.

61.   As a result Plaintiff Marcela had to perform more work at the other locations as no duties were removed from Plaintiffs' responsibilities.

62.   Defendants did not pay Plaintiff Scicluna the overtime premium for hours worked at their other locations despite now working forty (40) hours at 12 East 46th Street and an additional ten (10) to thirty (30) hours each week at the additional buildings, paying seemingly random amounts that did not equal the amount owed for overtime premiums.

63.   Further, Plaintiff Marcela began working more hours at that point to make up for time Plaintiff Scicluna was unable to be at work without receiving any additional compensation.

64.   Whenever Plaintiffs complained about their pay, Defendants threatened to fire them and kick them out of their apartment.

65.   When Plaintiff Scicluna and Plaintiff Marcela began working for the Defendants, they had little knowledge of employment laws in New York and were in need of a job. Plaintiff Scicluna was offered the position as superintendent for the Defendants after the current super was retiring after fourteen (14) years. Plaintiff Scicluna was being paid the same amount as the previous superintendent was being paid.

66.   Further, from the beginning of their employment until approximately May of 2017 Defendants treated Plaintiffs as independent contractors rather than employees, resulting in a significant amount of liability for payroll taxes which would otherwise have been paid by their employer.

67.   In or around June of 2019, Plaintiffs found that their son tested for high levels of lead in his blood.

68. Plaintiffs immediately informed Defendant Lee of this and they scheduled a lead paint test.

69. Defendant Lee's lead test was a fraud that they claimed resulted in a "negative" reading.

70. Plaintiffs used a home test at their apartment in December of 2019 and found that there was lead.

71. Plaintiff Scicluna wrote a complaint to Defendants' agent on December 30, 2019, listing various issues including the following which are threats to the health and safety of the general public:

    a. Plaintiff was asked to drain the tanks for emergency fire systems in buildings;

    b. Plaintiff was asked to act as a fire marshal in buildings where he was not present;

    c. Plaintiff complained that there was lead in his apartment and he believed there was lead in other apartments including those being renovated without appropriate precautions;

    d. Plaintiff complained that there might be asbestos in the building which was being renovated but Defendants were not properly protecting others in the building and the public from this.

72. Plaintiff Scicluna also complained that he was not getting paid overtime.

73. Plaintiffs asked the City of New York to perform an additional test in or around January of 2020.

74. The City of New York's test found that the paint tested positive for lead, confirming Plaintiffs' fears.

75. Defendants then decided to terminated Plaintiffs' employment in retaliation for these complaints on January 10, 2020, ordering him to vacate his apartment and end work.

76. Plaintiffs, at all times relevant hereto, were paid by each Defendant on either a monthly or bi-weekly basis despite working in as physical laborers.

77. Plaintiffs are and have always since the beginning of their employment been employees for each of the Defendants pursuant to the FLSA and NYLL.

78.   Plaintiffs are owed a minimum wage, overtime premium and lost pay to which they are entitled under the FLSA and NYLL and have been damaged in an amount yet to be determined.

79.   Defendants' violations of the FLSA and NYLL were done with knowledge of the law and with full understanding that this policy violated the law.

**AS A FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**

80.   Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

81.   Defendants willfully employed Plaintiffs in the afore-mentioned enterprise and failed to compensate Plaintiff for all hours worked during his employment.

82.   Upon information and belief, Defendants do more than $500,000.00 in business each year and handle goods which have moved in interstate commerce.

83.   All Defendants acted as joint employers of Plaintiffs.

84.   Defendants failed to pay the legally mandated overtime premium for all hours worked by Plaintiff Scicluna and for hours worked over forty (40), instead paying him set amounts.

85.   Defendants failed to pay Plaintiff Marcela the minimum wage throughout her employment, at times paying her nothing and at other times paying her less than the required minimum wage.

86.   Defendants paid Plaintiffs illegally as independent contractors which caused them to be paid less than that to which they were entitled due to payments not being made to the taxing agencies on their behalf.

87.   Defendants' failure to comply with the FLSA caused Plaintiffs to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW (minimum wage and overtime)

88.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

89.    Plaintiffs were employees of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.; Article 6 & 9 of the NYLL; 12 NYCRR § 142-2.4).

90.    All Defendants acted as joint employers of Plaintiffs.

91.    Defendants failed to pay the legally mandated overtime premium for all hours worked by Plaintiff Scicluna and for hours worked over forty (40), instead paying him set amounts.

92.    Defendants failed to pay Plaintiff Marcela the minimum wage throughout her employment, at times paying her nothing and at other times paying her less than the required minimum wage.

93.    Defendants paid Plaintiffs illegally as independent contractors which caused them to be paid less than that to which they were entitled due to payments not being made to the taxing agencies on their behalf.

94.    This includes the failure to pay an additional hour of pay for every day wherein Plaintiffs were required to work in excess of ten (10) hours, known as "spread of hours" pay.

95.    Defendants' violations were willful.

96.    Defendants failed to pay minimum wage, overtime, and spread of hours pay as is required by the New York Labor Law.

97.    On account of such violations, Defendants are liable to Plaintiffs for actual, statutory and liquidated damages.

### AS A THIRD CAUSE OF ACTION FOR
### VIOLATION OF NEW YORK LABOR LAW (wage notice and statement)

98.     Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

99.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

100.    At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiffs with the notice(s) required by NYLL 195(1) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b).

101.    At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiffs with the statement(s) required by NYLL 195(3) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d)

### AS AND FOR A FOURTH CAUSE OF ACTION
### VIOLATION OF NEW YORK LABOR LAW (retaliation)

102.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

103.    Plaintiff Scicluna complained to Defendants about a number of issues relating to the public health and safety and also about how he was being paid.

104.    Defendants then retaliated against Plaintiffs by terminating their employment.

105.    This action violates the New York Labor Law §§ 215 & 740.

106.    As a result of this violation, Plaintiffs have suffered and continue to suffer loss of wages,

benefits and emotional damages for which Defendants are liable.

107.    Plaintiffs are further entitled to reinstatement, punitive damages, liquidated damages, injunctive relief and attorneys' fees and costs.

<strong>AS AND FOR A FIFTH CAUSE OF ACTION</strong><br><strong><u>VIOLATION OF NEW YORK LABOR LAW (weekly payment)</u></strong>

108.    Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

109.    At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

110.    At all times relevant Plaintiffs were employed as manual workers under the definition included in NYLL § 190(4) and as such were to be paid on a weekly basis.

111.    Defendants failed to pay Plaintiffs on a weekly basis and therefore are liable for liquidated damages, attorneys' fees, and costs relating to this action.

<strong><u>JURY DEMAND</u></strong>

112.    Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A.  Awarding all wages not paid as required under the FLSA and NYLL, plus any damages under the FLSA and the NYLL and interest;

B.  Declaring that Defendants' policies and procedures violate the FLSA and the NYLL;

C.  Awarding damages to the Plaintiffs to otherwise make them whole for any losses suffered as a result of such unlawful employment practices and reinstating him to his prior position;

D.  Awarding Plaintiffs punitive damages and liquidated damages;

E.  Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the

action;

F.  Awarding interest under State Law accruing from the time of the loss or at a time to be set by

the Court;

G.  Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and

proper to remedy the Defendants' unlawful employment practices.

Dated:  Astoria, New York
January 28, 2020

**THE ROSE LAW GROUP, PLLC**

_____
Jesse C. Rose (JR-2409)
3109 Newtown Avenue
Suite 309
Astoria, New York 11102
PH: (718) 989-1864
Fax: (917) 831-4595